Nash, J.
 

 The object of the bill is to set up and enforce the compromise set forth in it. There is no dis
 
 *309
 
 pute as to the fact of the compromise, nor its terms. The only controversy is as to its effect. Josiah alleges, it never bound him, because Abraham never acceded to it, and the latter denies he ever was a party to it. The same questions presented themselves, when the case was upon a former occasion, before us, and we then declared that the facts admitted by the answers were sufficient to continue the injunction, previously granted to. the hearing, and to put the parties to their proofs. The testimony filed has not in any respect altered the view then taken of the equities of the parties. Josiah and Abraham Washburn, as two of the executors of the last will and testament of Gabriel Washburn and devisees under it, caused it to be proved in common form, without giving to the other parties interested any notice. A petition was filed by Gilbert Harrell and his wife, for the pur pose of setting aside the probate. An issue of
 
 devisavit vet non
 
 was made up, to which the defendants were parties and, during its pendency, the compromise now in dispute was effected, and entered upon the records of the Court. This took place at July term, 1827, of Rutherford County Court, after which time there were no further proceedings in the case. In pursuance, however,' it would appear, of the compromise, the widow at the March term following is, by the same Court, appointed administratrix •of her deceased husband, and the plaintiff Harrell and the defendant executed her bond as sureties for the faithful discharge of her duties. From March 1825, until her death in 1833, she remained in undisturbed possession of the whole of the property,, except so far as she permitted the defendants to take into their occupancy portions of it. No attempts were made by any of the next of kin, to disturb her, or to call her to account to obtain a distribution of what might be due and coming to them. Eleven years she enjoyed the property — in a manner perfectly consistent with the terms of the compromse, and her possession is acquiesced in by all the parties in
 
 *310
 
 terested in the distribution of G. Washburn’s estate. It is impossible to believe under these circumstances, that the compromise was effected by llarrell and Josiah Wash-burn alone, and for their sole benefit; but it is evident it was so intended and so understood at the time, by all the parties, that it was made by them all. As to the allegations of the defendant Abraham, it is painful to remark upon them. He would have us believe, that a proceeding- instituted by himself to establish the last will and testament of his father, in which he was deeply interested, had been stopped in its progress without his knowledge and consent — without eliciting from him any enquiries — any expression of discontent — or any effort, until eleven years thereafter, to cause the will to be proved. But more than this: immediately after the compromise, he not only acquiesces in the appointment of his mother as administratrix, but aids and assists her in her application, by burdening himself as one of her sureties, and signing the'bond as such. In swearing to the answer filed' by him, he has encountered a painful responsibility.
 

 The defendants admit they took possession of the property as charged, but aver they did so in the character of devisees and legatees, and not under the compromise ; and that the original probate never was set aside. The record sets out enough to satisfy us that the probate was called in; for it shews, that after the petition was filed .and notice served on the defendants, an issue of
 
 devisavit vel non
 
 was ordered by the Court. But we are not left to deductions drawn from the fact admitted by the answers. The testimony in the cause fully sustains the charge in the bill, as to the compromise. Mrs. Langford testifies that she heard Abraham Washburn say, that he had agreed to the compromise. The testimony of this witness is assailed by several witnesses on behalf of the defendant, but her character is sustained by others as many in number, and is supported by the attendant circumstances. It is true, a Court of equity will not decree
 
 *311
 
 against the positive averment of an answer, upon the testimony of one witness, unless there are circumstances proved by other witnesses, which sustain it. Such is the case here. She is strongly corroborated by Major R. Alexander, a witness on behalf of the defendant; he is the surveyor who divided the land between the defendants, and states that the division was made after the compromise, and that he understood, from the defendants, that they were to take the land for their part of the estate of Gabriel Washburn. Another witness, I-Iosea Harrell, avers the same. We have, then, no hesitation in saying the compromise is established to our entire satisfaction. But it is said, if that be so, the Court cannot grant to the plaintiffs the relief they seek against Abraham Washburn. The act of 1819,
 
 Rev. St. ch.
 
 50,
 
 s.
 
 8, is relied on. The act provides,
 
 “
 
 that all contracts to sell any slave or slaves shall be void, unless such contract, or some memorandum thereof, shall be put in waiting, signed by the party to be charged therewith, or by some other person, by him thereto lawfully authorized, &c.”
 

 The objection is, that Josiah Washburn was not lawfully authorized by Abraham to act as his agent in making the contract; and, if he were such agent, he has not signed the name of Abraham Washburn, nor his own as such agent. The.difficulty raised in this part of the case is, we think, answered by the Court, in the case of
 
 Oliver
 
 v.
 
 Dix,
 
 1 Dev. & Bat. Eq. 165. It is there said—
 
 “
 
 The transaction was prior to the statute of Frauds, and a contract of James, by parol, made by his agent, was good. But it would be equally so now, for the statute requires a writing, to be signed by the party to be charged therewith, or some other person, thereto by him lawfully authorized. Within the statute, the signature need not be that of the principal, nor in his name, but that of the agent is sufficient.” We are of opinion, then, that the plaintiffs are entitled to the relief they seek- — that Josiah Washburn, in signing the contract of compromise, was
 
 *312
 
 the agent of his brother Abraham Washburn, and the latter is bound by it as well as Josiah. Although the appointment of Josiah as agent of his brother is not expressly proved, yet the repeated acts of Abraham, recognizing and adopting the terms of the compromise, and his long acquiescence under it, put it beyond his power successfully to deny it. 2
 
 Kent Com.
 
 613. As to the statute of limitations, we think it has no operation upon the rights of the plaintiffs. This is a bill for a specific performance of a contract — by the vendee against the vendors. As to diligence, it is obvious that the plaintiffs have been constantly urging their claims, either at law or in equity. It is a question of diligence.
 

 Per Curiam.
 

 Decree for the plaintiff with costs.